45 P.3d 829

**Cindy ROBINSON, Plaintiff–Respondent,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant.**

**No. 24952.**

Supreme Court of Idaho, Idaho Falls, September 2001 Term.

April 10, 2002.

Elam & Burke, P.A., Boise, for appellant. Bobbi K. Dominick argued.

Harris Law Offices, Boise; Feldman & Orlansky, Anchorage, Alaska; Friedman, Rubin & White, Anchorage, Alaska, for respondent. Jeff Feldman argued.

SCHROEDER, Justice.

## ON REHEARING

State Farm Mutual Automobile Insurance Company appeals the district court's judgment entered upon a jury verdict of approximately $9.6 million dollars arising from a complaint of bad faith in the handling of a claim by its insured, Cindy Robinson. The Court issued an opinion in this case on December 28, 2000 (*Robinson I*). State Farm Mutual Automobile Insurance Company petitioned the Court for rehearing and the Court granted that petition.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

In 1991, Cindy Robinson (Robinson) purchased a standard automobile insurance policy from State Farm Mutual Automobile Insurance Company (State Farm), which included a cap provision of $25,000 on medical payment coverage (MPC).

In January of 1992, the left rear wheel of Robinson's automobile fell off as she was driving on the interstate, resulting in a jolt as the automobile dropped several inches to the ground. Robinson maintained control of the vehicle and brought it to a stop. She experienced no immediate symptoms, but later noticed pain in her back and within a few days sought medical attention. She was treated conservatively in January and early February of 1992, and was eventually diagnosed with a herniated disc for which she underwent surgery in late February of 1992.

Robinson reported the incident to State Farm in April of 1992 and requested payment of the medical bills under the MPC provision of her policy. State Farm paid $1,662 of pre-surgery medical bills in July of 1992 but declined to pay any bills related to the surgery due to questions regarding causation.

State Farm sent Robinson's file to Medical Claims Review Service (MCRS), a medical records review company on State Farm's list of approved reviewers, asking for an opinion as to whether Robinson's herniated disc was causally related to the January 17th incident. State Farm routinely used the paper review services provided by MCRS in lieu of conducting more costly independent medical exams. MCRS issued a report to State Farm indicating that its review of the medical documentation did not support a causal relationship between the January 17th incident and the subsequent medical care for Robinson's herniated disc.

A physician chosen by State Farm and a forensic chiropractor chosen by Robinson subsequently examined her. The results of both exams were sent to MCRS which again indicated a lack of causal relationship with the January 17th incident. Based upon the review by MCRS, State Farm denied Robinson's claim for surgery costs.

In August of 1994, Robinson filed suit against State Farm alleging breach of insurance contract and bad faith handling of her claim. Subsequently, the district court permitted her to amend the complaint to include a claim for punitive damages.

Robinson's claim was reassigned to another claim representative in March of 1995. State Farm paid the remaining limits of her policy to her medical care providers after a review of her medical records by an orthopedic surgeon indicated that there was a causal connection between her injuries and the January 17th accident.

At trial Robinson introduced evidence that State Farm had engaged in a practice of

referring claims to MCRS and other paper review companies, knowing that these companies would return a review favorable to State Farm. She also presented evidence that State Farm failed to conduct a reasonable investigation of her claim before denying payment under the policy. State Farm introduced evidence attempting to rebut Robinson's assertion that it had acted in bad faith as well as evidence of misrepresentation on the part of Robinson in filling out her insurance application.

On April 2, 1998, the jury returned a general verdict in favor of Robinson, finding that State Farm had breached its insurance contract with her, that State Farm acted in bad faith in delaying payment of the claim, and that its acts or omissions warranted the imposition of punitive damages. The jury awarded compensatory damages of $102,520 and $9,500,000 for punitive damages. State Farm filed post-judgment motions for judgment notwithstanding the verdict, a new trial and remittitur of the amount of punitive damages. The district court denied State Farm's post-judgment motions. State Farm appealed asserting numerous issues. This Court will address those that are dispositive of the appeal.

## II.

## THE DISTRICT COURT MISPLACED THE BURDEN OF PROOF ON THE QUESTION OF WHETHER ROBINSON'S CLAIM WAS FAIRLY DEBATABLE

### A. Standard of Review

■ The question of where a burden of proof lies is a question of law. This Court exercises free review over the district court's conclusions of law and may substitute its view for that of the district court on a legal issue. *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 737, 979 P.2d 605, 610 (1999); *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997).

When reviewing jury instructions on appeal, the Court is guided by several well-established general rules of construction. On appeal, the review of jury instructions is generally limited to a determination of whether the instructions, when considered as a whole and not individually, fairly and adequately present the issues and state the applicable law. *Sherwood v. Carter*, 119 Idaho 246, 256, 805 P.2d 452, 462 (1991). If the instructions fairly and adequately present the issues and state the law, no reversible error is committed. *Id.* An erroneous instruction does not constitute reversible error where the instruction taken as whole neither misleads nor prejudices a party. *Id.* Only instructions which are pertinent to the pleadings and the evidence should be given, but where it appears that the giving of the instruction did not result in any substantial injury, though not founded on the issues, the case will not be reversed. *Id.* at 260, 805 P.2d at 466. Additionally, the giving of an erroneous jury instruction does not generally justify granting a new trial unless the appellant can establish that he or she was prejudiced thereby, and that the error affected the jury's conclusion. *Id.*

*Highland Enterprises, Inc. v. Barker*, 133 Idaho 330, 343, 986 P.2d 996, 1009 (1999).

### B. This Court Has Previously Determined That The Burden Of Proof Is On The Insured In A Bad Faith Claim

■ In *White v. Unigard Mut. Ins. Co.*, 112 Idaho 94, 730 P.2d 1014 (1986), the Court addressed the issue of first-party bad faith insurance claims and stated that the plaintiff must show: 1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages. This Court has consistently followed the lead in *White v. Unigard* and held that the insured has the burden of showing that the claim was not fairly debatable. *See Simper v. Farm Bureau Mut. Ins. Co.*, 132 Idaho 471, 474, 974 P.2d 1100, 1103 (1999), *Lucas v. State Farm Fire & Cas. Co.*, 131 Idaho 674, 677, 963 P.2d 357, 360 (1998), and *McGilvray v. Farmer's New World Life Ins. Co.*, 136 Idaho 39, 28 P.3d 380, 386 (2001) which were decided after trial in this case.

*White v. Unigard* and *Anderson v. Farmers Ins. Co.,* 130 Idaho 755, 947 P.2d 1003 (1997) were decided prior to trial in this case and state the applicable law: "In order to recover on her bad faith claim Anderson must show: (1) the insurer intentionally and unreasonably denied or withheld payment, (2) *the claim was not fairly debatable.* ..." *Anderson,* 130 Idaho at 759, 947 P.2d at 1007. (emphasis added). It was the clear pronouncement of this Court that the burden of proof is upon the insured to show that the claim was not fairly debatable.

The district court shifted the burden to the insurer to show that the claim was fairly debatable. In its memorandum decision denying State Farm's post-judgment motions, the district court explained its allocation of the burden of proof by stating:

> The plaintiff's burden is to prove as a fundamental element of the case and in the first instance, that the delay in payment was unreasonable.... The defense of a fairly debatable issue only arises after the plaintiff has proved generally that the delay was unreasonable, under all circumstances. This specific defense entitles the defendant to explain that the unreasonable delay was excused by the presence of a fairly debatable problem.... To require the plaintiff to disprove the defense theory as part of its case-in-chief ... would require the plaintiff to prove a specific negative proposition which is already generally embedded within the affirmative proposition of "unreasonable delay."

The Court is presented with the issue of whether the jury instructions, considered as a whole, fairly and adequately presented the issues and applicable law. At trial, the district court instructed the jury on the burden of proof as follows:

> When I say that a party has the burden of proof on any proposition, or use the expression "if you find" or "if you decide," I mean you must be persuaded, considering all the evidence in the case, that the proposition on which the party has the burden of proof is more probably than not true.

Jury Instruction No. 4.

The district court instructed the jury on the issue of bad faith as follows:

On plaintiff's claim that the defendant breached the implied duty of good faith and fair dealing, the plaintiff has the burden of proof on the following proposition:

1. That in failing to pay the benefits due under the policy in full and in a timely fashion, the defendant acted intentionally and unreasonably in first denying and then delaying the payment of benefits; and

2. That the plaintiff suffered damages which were not fully compensated by the payment of benefits under the policy.

If the plaintiff proves these propositions, and if the defendant does not prove its affirmative defense, your verdict should be for the plaintiff on the issue of liability on this claim. If the plaintiff fails to prove this proposition or if the defendant proves its affirmative defense, your verdict should be for the defendant on the issue.

Jury Instruction No. 18

In this case, the defendant has asserted the affirmative defense that the circumstances of the claim presented issues, which were fairly debatable, or that it was acting under an honest mistake as to the true facts. On these defenses, the defendant has the burden of proof on the following propositions:

1. That the plaintiff's claims for medical expenses presented issues of causation which were fairly debatable, as that term is defined in these instructions, which resulted in the delays encountered in processing the claim for benefits.

2. That the defendant was honestly mistaken, as that term is defined in these instructions, as to the true facts underlying plaintiff's claim, which mistake resulted in the delays encountered in processing the claim for benefits.

If the defendant proves either or both of these propositions, it has established the affirmative defense, and your verdict must be for the defense. If it fails in this proof, it has not established its affirmative defense.

Jury Instruction No. 21

The term "fairly debatable" means that at the time this claim was under consider-

ation, there existed a legitimate question or difference of opinion over the eligibility, amount or value of the claim.

### Jury Instruction No. 13

An honest mistake means an innocent mistake which was made despite the presence of procedures to prevent the making of such mistakes. It is a mistake that occurs despite reasonable care to prevent it. A mistake which is the result of negligence or inattention or indifference is not an honest mistake.

### Jury Instruction No. 14

■ These instructions present the issues and state the applicable law regarding a bad faith insurance claim, except that they place the burden of proof on State Farm to show that the claim was fairly debatable and that the denial or failure to pay was not the result of a good faith mistake, both of which are elements of a plaintiff's *prima facie* case. Robinson was excused from proving an essential element of the bad faith claim as that claim has been defined by this Court since *White v. Unigard* in 1986. That is not harmless error. Further, to say that the burden is different at summary judgment and at trial is unacceptable. Rulings on motions for summary judgment are the typical method of defining the law applicable at trial. To follow a different path would leave litigants without guidance, undercutting the benefits of resolving issues of law prior to trial so trial may be conducted in an orderly fashion with a clear understanding of the applicable rules.

### III.

### THE DISTRICT COURT ERRED IN HOLDING THAT PROOF OF COVERAGE IS NOT AN ELEMENT OF A PLAINTIFF'S BAD FAITH CLAIM

The district court held because State Farm had already paid Robinson's claim, that coverage was not an issue; rather, the issue was unreasonable delay in payment. Because the issue was delay and not coverage, the district court eliminated any need for Robinson to prove coverage under the policy.

■ A plaintiff can bring one of two types of bad faith claims: unreasonable denial or unreasonable delay. However, the coverage a plaintiff will have to prove in order to establish a *prima facie* case is not dependent on the nature of the bad faith claim.

■ The district court stated:

The issue would have perhaps been different if State Farm had denied the claim to the end, which would have framed the issue of whether the claim itself was within the policy or not. In this case, however, since State Farm paid the claim, the issue over the breach under the policy was the delay of payment, not the outright denial of it, and the elements of proof were changed accordingly.

Contrary to the district court's holding, the fact that State Farm eventually paid Robinson's claim does not, as a matter of law, establish that Robinson had coverage under the policy.

■ In order for Robinson to have established a *prima facie* case she had to establish (1) that coverage of her claim was not fairly debatable; (2) that she had proven coverage to the point that based on the evidence the insurer had before it, the insurer intentionally and unreasonably withheld her benefits; (3) that the delay in payment was not the result of a good faith mistake; and (4) that the resulting harm was not fully compensable by contract damages. *See Simper,* 132 Idaho at 474, 974 P.2d at 1103; *Lucas,* 131 Idaho at 677, 963 P.2d at 360; *Anderson,* 130 Idaho at 759, 947 P.2d at 1007. Fundamental to the claim of bad faith is the idea that there must be coverage of the claim under the policy. If that be the case and the insured proves the other elements of a bad faith claim as this Court has outlined them, the insured may recover damages for the tort of bad faith that extend beyond contract damages.

■ The jury may assume that an insurer would only pay a covered claim. However, that does not foreclose the insurer from establishing that the claim was paid for reasons other than those constituting bad faith. There are reasons payment may be made by an insurer that do not establish as a matter

of law that there was coverage of the claim under the policy. It is possible that the insurer paid the claim in an effort to the settle the case or in an effort to mitigate possible punitive damages. An insurer may assert that causation was debatable up until the time ultimate payment was made, and that payment was made in good faith. The fact that an insurer pays a claim does not equate to a blanket finding that coverage was not in dispute. Payment does not eliminate the insurer's opportunity to present evidence regarding the debatability of coverage or the reasonableness of its conduct.

■ In a case where the claim is denied and liability under the policy is later established, an insured may recover. *Wells v. United States Life Ins. Co.*, 119 Idaho 160, 166, 804 P.2d 333, 339 (Ct.App.1991). But it is incorrect to say that in a bad faith delay of payment case where the insurer has paid the claim that the insured has no duty to prove he or she had a valid claim or that coverage is assumed as a matter of law.[1] It is more accurate to say that if the insurer has paid the insured's claim, this is evidence from which a jury may infer that there was coverage.

■ The district court was correct when it stated in its memorandum decision that "the duty in tort is founded upon contract and the existence of a breach of the contractual duty is essential to the cause of action in tort. The duty is in contract, the damages in tort." Robinson is incorrect in her assertion that the contract is not material to her action in tort for bad faith. The insurer has a duty to provide coverage if conditions are met under the insurance contract. If that duty is breached, instead of treating the claim as a breach of the covenant of good faith and fair dealing under the guise of a contract claim, the Court has held that an action can be brought as a tort claim. *See White*, 112 Idaho at 98, 730 P.2d at 1018. However, a tort claim can only be brought on the basis that a duty under the contract has been breached. Questions like "Was the claim fairly debatable?" or "Did the insurer unreasonably withhold benefit payments to the insured?" are all premised on the notion of whether the insurer acted in bad faith given the evidence of a valid claim under the policy.

Prior to instructing the jury, it is evident from the trial transcript that both Robinson's counsel and the district court were operating under the belief that Robinson did not have to prove that her claim was valid in that her accident caused her injury, nor that this issue would be put to the jury for consideration. Counsel for Robinson stated in his closing argument "I'll tell you something that I think will be unusual and surprising to you when you go back into the jury room and look at the instructions. There's not a single instruction that says Plaintiff has to prove the accident caused her herniated disc. Not a single instruction. Because the focus is supposed to be on what they did."

The relevant jury instructions stated:

Plaintiff's claim against the defendant is in three parts. Under the first part, plaintiff contends that the defendant breached the contract of insurance by failing to pay her benefits under the policy to which she was entitled. Under this part, plaintiff is seeking additional money due her under the terms of her policy.

Under the second part of plaintiff's claim, plaintiff contends that defendant breached its implied duty of good faith and fair dealing by intentionally and unreasonably denying and then delaying payment of benefits under the policy. Under this part, plaintiff is seeking damages which she suffered and which were not fully compensated for by the payment under the policy.

Under the third part of plaintiff's claim, plaintiff contends that the conduct of the defendant was extreme and outrageous, and that she is entitled to punitive damages on account thereof.

Jury Instruction No. 15

The district court split Robinson's claim up into three "stages": breach of contract, bad faith and punitive damages. The stage that speaks to the issue of valid coverage is the

---

1. There may also be bad faith claims brought for under-payment of a claim in which payment cannot be said to "admit" coverage over the entire claim.

first, breach of contract. The instruction on that issue reads as follows:

On plaintiff's claim that the defendant breached the contract of insurance, plaintiff has the burden of proof on the following proposition:

1. That the plaintiff made timely demand upon the defendant for benefits covered by the insurance policy.

2. That the defendant failed to pay the benefits due under the policy in full and timely fashion.

If plaintiff proves this proposition, and if defendant does not prove its affirmative defense, your verdict should be for the plaintiff on the issue of liability on this claim. If the plaintiff fails to prove this proposition or if the defendant proves its affirmative defense, your verdict should be for the defendant on this issue.

Implicit in this instruction is that there must be coverage under the policy for Robinson to recover on the breach of contract claim, a proposition that cannot be disputed. However, there is no instruction requiring Robinson to prove coverage to establish the bad faith claim. Arguably, the concept of proving coverage would be encompassed in the proof that the claim was not fairly debatable if Robinson had been assigned that burden. However, that burden was not placed on Robinson.

The district court erred in not instructing the jury that proof of coverage was an element of Robinson's bad faith claim and that State Farm could contest coverage despite making payment on the claim.

### IV.

### THE DISTRICT COURT DID NOT ERR IN DENYING STATE FARM'S DEFENSE OF MISREPRESENTATION

State Farm asserted the defense of misrepresentation to avoid liability under the insurance policy, claiming that Robinson made material misrepresentations in her application for the policy. This defense was based on I.C. § 41–1811 which provides the following:

Representations in applications. All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefore, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(a) Fraudulent; or

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Idaho Code § 41–1811 was adopted in 1961. Prior to that time, the common law controlled material misrepresentations in a contract for insurance. At common law, if a party's manifestation of assent to contract was induced by either a fraudulent or a material misrepresentation by the other party, upon which the recipient was justified in relying, the contract was voidable by the recipient. *See* RESTATEMENT (SECOND) OF CONTRACTS § 164(a) (1981). A voidable contract exists where one or more parties have the power to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance. *See id.* at § 7. Material misrepresentation permits the defrauded party to elect from three possible remedies: damages, rescission, or enforcement of the bargain against the fraudulent party according to the fraudulent party's representation of the bargain. *See* 12 Samuel Williston, Contracts § 1523, at 606–07 (3rd ed.1970); *Queen City Farms v. Central Nat. Ins.*, 126 Wash.2d 50, 891 P.2d 718 (1995).

 Rescission of a contract is intended to place the parties in the positions they

occupied prior to the contract and is available only when one of the parties has committed a material breach, which destroys the entire purpose for entering into the contract. *See Crowley v. Lafayette Life Ins. Co.*, 106 Idaho 818, 821, 683 P.2d 854, 857 (1984). The party desiring to rescind a contract must, prior to rescinding, tender back to the other party any consideration or benefit received under the contract by the rescinding party. *See id.; see also Peterson v. Universal Automobile Ins. Co.*, 53 Idaho 11, 16, 20 P.2d 1016, 1021 (1933) (The company, after notice of the ground for forfeiture, by retaining the premium without canceling the policy, waives the breach.); *Gossett v. Farmers Ins. Co. of Washington*, 133 Wash.2d 954, 948 P.2d 1264, 1274 (1997); 17 Am.Jur.2d Contracts § 512 (1964); 17A C.J.S. Contracts § 439 (1963). These rules of the common law are in effect in Idaho unless modified by other legislative enactments. *See* I.C. § 73–116; *Evans v. Twin Falls County*, 118 Idaho 210, 215, 796 P.2d 87, 92 (1990).

█ Idaho Code § 41–1811 has codified the common law defense of fraud and misrepresentation in the insurance contract context and has limited its application. Idaho Code § 41–1811 describes the only circumstances in which a contract for insurance is voidable. However, nothing in I.C. § 41–1811 abrogates the common law requirement that the party seeking rescission must tender back any consideration or benefit received under the contract.

█ State Farm raised the affirmative defense of misrepresentation in its amended answer. The district court granted Robinson's motion to dismiss the affirmative defense based on the finding that State Farm had not tendered premiums to Robinson prior to the court's ruling on the motion. This Court agrees that State Farm was required to tender premiums back to Robinson in a timely manner. The tender in this case came after State Farm had submitted its case at trial. The tender was not timely.

█ State Farm argues that the equivalent of tender was paid to Robinson in the form of benefits prior to Robinson's case being filed in April of 1992, and, therefore, no further tender was required. State Farm relies upon *Peterson,* 53 Idaho at 16, 20 P.2d at 1021. *Peterson* stands for the proposition that if a loss occurs prior to the insurer learning of a ground of forfeiture, the retention by the company of the unearned portion of the premium is not inconsistent with a claim for forfeiture of the policy. "The company does not fail in its promise by insisting on its conditions; not having broken its contract, it has a right to retain the consideration. The insured has received all he contracted and paid for—conditional insurance—and has no right to demand a return of the price paid from the insurer . . ." *Id. Peterson* is not controlling on the issue presented in this case.

█ Regardless of whether the payment of benefits may be treated as the equivalent of tender of premiums in some instances, State Farm was reimbursed for the benefits paid Robinson more than a year before it raised the misrepresentation defense. The reimbursement occurred after Robinson settled her case with Bruneel Tires. State Farm was required to make tender of premiums paid within a reasonable time after it discovered the potential of a misrepresentation defense. It did not make a timely tender.

## · V.

## CONCLUSION

The judgment entered in the district court is vacated and the case is remanded for a new trial. Neither party is awarded costs or attorney fees.

Chief Justice TROUT sat, but did not participate.

Justice EISMANN and Pro Tem Justice HAMAN concur.

Justice WALTERS, CONCURRING IN PART and CONCURRING IN RESULT.

I agree with the majority that the burden of proof is on the insured in an action by the insured to recover damages based upon the alleged bad faith of an insurance company in processing a covered claim. However, I am

not persuaded that the district court misplaced that burden or erred in its instructions to the jury concerning the burden of proof in this case. Beyond the burden ordinarily placed on a plaintiff in such cases, State Farm undertook to specifically allege as an affirmative defense that its role in the delay was due to circumstances presenting "fairly debatable" issues of causation. The instructions submitted by the district court accommodated the company's allegations in light of the evidence presented by the parties. Had the court failed to give these instructions, then arguably there would have been error of a different nature.

However, I am convinced that the district court erred in relieving Robinson from proving that there was coverage under the policy as a predicate element for recovery of damages for the tort of bad faith in processing the insurance claim. Where there is no coverage, i.e., a contractual relationship requiring the company to pay an insured's claim, the tort of bad faith does not lie. *McGilvray v. Farmers New World Life Ins. Co.*, 136 Idaho 39, 45–46, 28 P.3d 380, 386–87 (2001); *Wells v. United States Life Ins. Co.*, 119 Idaho 160, 166, 804 P.2d 333, 339 (Ct.App. 1991). Moreover, as noted in the lead opinion, although payment of a claim or part of a claim by the insurer may serve as evidence to show the company's acknowledgement that coverage exists, that payment alone does not remove the requirement that the insured establish the coverage relationship between the parties.

Accordingly, I concur in the conclusion that this case must be remanded for a new trial.